IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARRYL LEWIS,<br>2207 Lake Park Drive SE, Apartment M<br>Smyrna, Georgia 30080,<br><br>Plaintiff,<br><br>v.<br><br>KALEV MUTOND,<br>Administrateur Generale<br>Agence Nationale de Renseignements<br>Boulevard Col. Tshatshi<br>Gombe, Kinshasa<br>Democratic Republic of the Congo,<br>*in his individual capacity only,*<br><br>and<br><br>ALEXIS TAMBWE MWAMBA,<br>Ministre de la Justice, Garde des Sceaux et<br>    Droits Humains<br>Coin de l'Avenue des Cliniques et<br>    Boulevard de la Nation<br>Gombe, Kinshasa<br>Democratic Republic of the Congo,<br>*in his individual capacity only,*<br><br>Defendants. | Civil No. 1:16-cv-1547<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

1. Plaintiff Darryl Lewis brings this action to recover compensatory and punitive damages under the Torture Victim Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note, 106 Stat. 73, for severe pain and suffering caused to him by torture by Defendants in May and June 2016 in the Democratic Republic of the Congo ("DRC").

2. Plaintiff demands a jury trial on all issues so triable.

**PARTIES**

3.     Plaintiff Darryl Lewis is an American citizen currently residing and domiciled in Smyrna, Georgia.  He works as a security advisor.  He has previously served in the United States military.

4.     Defendant Kalev Mutond ("Kalev") is the General Administrator of the Congolese secret police, the Agence Nationale de Renseignements ("ANR").  At all times relevant to the events in this complaint he exercised full authority and control over the ANR and its members and they acted under his direction and control.  He was at all times responsible for giving orders to and supervising all ANR personnel.  He also participated personally in activities constituting detention, interrogation, and torture of Mr. Lewis.  Defendant Kalev is sued here in his individual capacity.

5.     Defendant Alexis Tambwe[1] Mwamba ("Tambwe") is the Minister of Justice in the DRC (his full formal title is "Ministre de la Justice, Garde des Sceaux et Droits Humains").  At all times relevant to the events in this complaint he exercised authority over the Ministry of Justice, with full authority over decisions to try detainees.  On information and belief he was involved in or responsible for decisions whether to detain, charge, try, or release Mr. Lewis.  On information and belief, he and his subordinates acted in concert with Defendant Kalev and his subordinates at the ANR to have Mr. Lewis detained, tortured, interrogated, and threatened with indefinite imprisonment on false charges, all to attempt to obtain false confessions to support a false accusation that American mercenaries were infiltrating the DRC to overthrow the government.  Defendant Tambwe is sued here in his individual capacity.

---

[1] This name is sometimes spelled "Thambwe."

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), because this action arises under the laws of the United States, namely, the TVPA. This Court also has jurisdiction under 28 U.S.C. § 1332(a)(2), because Plaintiff is domiciled in Georgia, Defendants are citizens of a foreign state (the DRC), and the amount in controversy exceeds $75,000 in that Plaintiff seeks to recover no less than $4,500,000 for the harms caused to him by the Defendants.

7. Jurisdiction over Defendants will be proper under Fed. R. Civ. P. 4(k)(2) following the completion of service of process.

8. Venue in this Court is proper under 28 U.S.C. § 1391(c)(3), because the Defendants are not residents of the United States and may be sued in any judicial district.

## GENERAL ALLEGATIONS

**History of Torture by Members of the ANR**

9. The DRC is a constitutional republic.

10. Torture is a crime and is unconstitutional in the DRC.

11. However, the United States Department of State has determined that ANR personnel have long been involved in human rights violations, including torture. *See, e.g.,* U.S. Department of State, "Democratic Republic of the Congo 2015 Human Rights Report," *available at* www.state.gov/documents/organization/252881.pdf (last visited July 26, 2016).

12. International aid organizations, such as the Red Cross, are allowed to access and evaluate the conditions of legitimate, lawful government detention facilities in the DRC. However, these organizations have not been able to access illegal detention facilities run by the ANR.

13. Under DRC law, detainees must appear before a magistrate within 48 hours, be read their rights, and be permitted to contact their families and attorneys. However, the ANR holds suspects in *incommunicado* detention in illegal facilities. Such detention, including the detention at issue here, occurs at the direction of or with the knowledge and consent of Defendants, who could prevent such detention.

14. Security personnel in the ANR arrest and detain perceived opponents and critics, often under the pretext of national security, without charging individuals or permitting access to an attorney.

15. Domestic human rights non-governmental organizations (NGOs) have been subjected to harassment, detention, and other abuses when reporting on abuses by the ANR.

16. Amnesty International has received many reports of torture and maltreatment of individuals under detention by the ANR. Institute for War & Peace Reporting, ACR Issue 220 at 6. ANR's activities are characterized by "flagrant and routine abuse[s] of human rights" that "can range from simple beatings to being ordered to lie down and stare into the sun for hours on end." *Id*.

17. There are numerous documented instances of torture by members of the ANR over just the last few years. On information and belief, Defendants directed, participated in, or knew of and supported this pattern of torture.

**Detention and Torture of Mr. Lewis**

18. On April 24, 2016, Mr. Lewis was working in the DRC in Lubumbashi as an unarmed security advisor to Moise Katumbi, an opposition leader and former governor of the Katanga Province, who is currently a candidate for president of the DRC.

19. At around 2:00 pm, near a political rally attended by Mr. Katumbi, the car in which Mr. Lewis and a colleague were riding and a second car with two other colleagues were stopped and surrounded by Congolese riot police. All four colleagues were unarmed and were breaking no laws. All were detained solely because of their association with Mr. Katumbi. Mr. Lewis was the only American among them.

20. Several members of the ANR arrived shortly thereafter. These persons pulled Mr. Lewis and his three colleagues out of their cars and confiscated their possessions, physically assaulted Mr. Lewis and his colleagues, handcuffed Mr. Lewis to one of his colleagues, handcuffed another of his colleagues, and forced them all back into the cars. In this process these members of the ANR slammed a car door on Mr. Lewis's left elbow. One of the ANR members repeatedly yelled at Mr. Lewis, falsely accusing him of being an American mercenary soldier.

21. The ANR members used the two cars to drive Mr. Lewis and his colleagues to a jail in Lubumbashi, where they were separated from each other and incarcerated in filthy, unsanitary conditions.

22. The ANR members interrogated Mr. Lewis for three hours while physically assaulting and abusing him and inflicting extreme mental and physical pain and suffering. This included knocking Mr. Lewis around, pulling his handcuffed hands up behind his back to put extremely painful pressure on his shoulder joints while pushing him in the back of the head, and other forms of battery. The object of the interrogation was to obtain a false confession that Mr. Lewis was an American mercenary soldier.

23. Mr. Lewis speaks English as his native language and does not speak French. His captors were all native French speakers and spoke to him in French except for a few who spoke in broken English or translated to broken English.

24. During the night the ANR members brutally beat one of Mr. Lewis's Congolese colleagues while interrogating this colleague, so that in the morning this colleague could barely walk. Mr. Lewis could hear the beating and interrogation from his nearby cell. The point of the interrogation was to extract a false confession from Mr. Lewis's colleague that Mr. Lewis was an American mercenary soldier, and to cause mental suffering in Mr. Lewis. During the beating, one of the ANR members came to the window of Mr. Lewis's cell and said "You're next." Mr. Lewis experienced extreme mental suffering as a result of this threat during a period when he fully anticipated that the threats he had received would be carried out.

25. In the morning, Mr. Lewis and his colleagues were transferred to a Jeep and driven away from the jail without being informed where they were being taken or why. One of his Congolese colleagues familiar with the ANR stated that he thought that they were being transported to a remote location to be secretly executed and began weeping.

26. Instead Mr. Lewis and his colleagues were taken to an airport and transported by air to Kinshasha, where they were incarcerated and interrogated again by the ANR members at ANR headquarters.

27. During a detention that lasted six weeks, Mr. Lewis was interrogated daily by ANR members for approximately 16 hours a day.

28. Interrogations were timed to disrupt sleep and cause severe sleep deprivation for Mr. Lewis.

29. Mr. Lewis was fed no more than one meal every 24 hours and was fed at irregular and unpredictable intervals.  The meals were too small to meet basic human needs.  By these means the ANR members were slowly starving Mr. Lewis while interrogating him.

30. Despite his daily requests for basic toiletries such as soap, Mr. Lewis was denied the necessities for basic hygiene.

31. Roughly ten days after Mr. Lewis was first detained, during his incarceration in Kinshasha, Defendant Kalev threatened him, "Don't let me find out you're a mercenary," saying in effect that Mr. Lewis would suffer greatly once a false confession was extracted, and that he would be sent to prison indefinitely.

32. At a press conference on May 4, 2016, Defendant Tambwe accused Mr. Lewis of being a mercenary sent to assassinate President Kabila.   Margaret Brennan, CBS News, "CBS Exclusive: Family of American security contractor jailed in Congo pleads for his freedom" (May 19, 2016) (*available at* http://www.cbsnews.com/news/cbs-exclusive-family-of-american-security-contractor-jailed-in-congo-pleads-for-his-freedom/) (last visited July 27, 2016).

33. Defendant Tambwe stated at the May 4, 2016 press conference that he ordered the general prosecutor of the DRC to open a judicial case against Mr. Katumbi over "documented proof" that American and South African mercenaries, including Mr. Lewis, were working for Katumbi in the Katanga province.  Elsa Buchanan, *International Business Times*, "DRC: US 'deeply concerned' as Moise Katumbi asks for UN intervention over 'imminent arrest'" (May 6, 2016) (*available at* http://www.ibtimes.co.uk/drc-us-deeply-concerned-moise-katumbi-asks-un-intervention-over-imminent-arrest-1558585) (last visited July 27, 2016).

34. Defendant Tambwe "showed as evidence pictures of an American, Darryl Lewis, who was arrested last month in Lubumbashi, carrying a machine gun. Mr. Lewis served in the

7

United States military several years ago and the picture was apparently an old one, taken from a social media account." Jeffrey Gettleman, "Congo Lurches Toward a New Crisis as Leader Tries to Crush a Rival," *The New York Times* (May 12, 2016, A1), *available at* http://www.nytimes.com/2016/05/12/world/africa/congo-moise-katumbi-joseph-kabila.html (last visited July 26, 2016).

35. Defendant Tambwe asserted that 600 United States citizens, mostly men, and some ex-soldiers had entered the DRC since October 2015, including Mr. Lewis, and falsely insinuated that these persons including Mr. Lewis were part of a supposed plot by Mr. Katumbi to destabilize the DRC. Ryan Rifai, Al Jazeera, "DR Congo cracks down on 'foreign mercenaries'" (May 4, 2016) (*available at* http://www.aljazeera.com/news/2016/05/dr-congo-cracks-foreign-mercenaries-160504150108710.html) (last visited July 27, 2016).

36. Defendant Tambwe specifically trumpeted the detention of Mr. Lewis, and stated that other United States veterans had been staying at residences owned by Mr. Katumbi "for reasons that the inquiry will clarify." Yahoo! News "DR Congo announces probe into opposition use of US mercenaries" (May 4, 2016) (*available at* https://www.yahoo.com/news/dr-congo-announces-probe-opposition-us-mercenaries-145556908.html) (last visited July 27, 2016).

37. Based on information and belief, the means Defendant Tambwe was using to "clarify" a false narrative regarding former U.S. military personnel infiltrating the DRC to overthrow the government included acting in concert with Defendant Kalev and the ANR in detaining and torturing Mr. Lewis to attempt to obtain a false confession.

38. Mr. Lewis was detained for six weeks by Defendant Kalev and his subordinates for the purposes of advancing Defendant Tambwe's "inquiry" to "clarify" falsehoods.

39. On information and belief, Mr. Lewis and other Americans have been singled out by Defendants for persecution, false accusations, mistreatment, torture, illegal detention, and/or

8

expulsion because they are Americans and, in the case of veterans such as Mr. Lewis, because they are veterans.

40. On May 5, 2016, the United States Embassy in Kinshasa issued a statement noting the detention of Mr. Lewis and stating that "the allegations of mercenary activities" made by Defendant Tambwe "are false." Embassy of the United States, Kinshasa, Democratic Republic of the Congo, "U.S. Embassy Concerned About False Accusations of Mercenary Activities" (May 5, 2015), *available at* http://kinshasa.usembassy.gov/pr-05052016.html (last visited July 26, 2016).

41. Despite Mr. Lewis's daily requests to contact his employer and his family and to obtain counsel, he was not allowed any contact with the outside world for two weeks, at which point United States Embassy officials were allowed a supervised visit with him.

42. After the first two weeks of Mr. Lewis's incarceration, ANR members began a series of mind games intended to disorient and confuse Mr. Lewis and instill false hope. This included falsely telling him they were transporting him to see a judicial officer for a hearing, transporting him out of his cell, and then returning him to his cell with no hearing.

43. ANR members also put an ANR member in Mr. Lewis's cell with him to attempt to disorient him and extract a false confession to being an American mercenary.

44. ANR members used information they obtained about the death of Mr. Lewis's brother and the sickness of his mother while he was in captivity to cause him mental distress and attempt to coerce false testimony from him.

45. After extensive diplomatic efforts and negotiation, Mr. Lewis was released on June 8, 2016.

46. Defendant Tambwe continues to threaten Mr. Katumbi and those associated with him by using a false narrative that Mr. Katumbi hired American mercenaries, and has continued to rely on the detention of Mr. Lewis as supposed evidence of this narrative. Defendant Tambwe has recently threatened Mr. Katumbi, who is currently abroad, with imprisonment if he returns to the DRC. *See* Abdur Rahman Alfa Shaban, "DRC jail awaits Katumbi if he returns—Justice Minister," *available at* http://www.africanews.com/2016/07/25/drc-jail-awaits-katumbi-if-he-returns-justice-minister/ (last visited July 26, 2016).

47. During the six weeks of Mr. Lewis's detention and interrogation, he was not charged with any crime.

48. The conditions of Mr. Lewis's detention were illegal and unconstitutional under the DRC constitution.

49. At all times during the detention of Mr. Lewis, either Defendant could have ordered that Mr. Lewis be released from custody and protected against or otherwise have avoided torture.

50. Defendants each knew or should have known of and could have prevented the torture of Mr. Lewis and failed to do so.

51. Defendants are jointly and severally liable for the damages claimed herein.

52. Although the Defendants acted under apparent authority or color of Congolese law at all times relevant to the acts alleged in this complaint, the Defendants' acts in the torture of Mr. Lewis were *ultra vires* and not authorized by law, because torture is a crime and is unconstitutional in the DRC.

53. Mr. Lewis continues to suffer mental anguish and physical pain caused by torture by the defendants, including continuing mental distress and damage to his left elbow and both wrists.

## **FIRST CAUSE OF ACTION**

## **TORTURE VICTIM PROTECTION ACT**

54. Plaintiff realleges and incorporates the allegations stated in the preceding paragraphs.

55. Defendants at all times used their respective positions of authority to act under apparent authority or color of law of the DRC with respect to the actions alleged in this complaint.

56. Defendants' actions and/or failure to act included or allowed torture of Mr. Lewis, including but not limited to the infliction of severe physical and mental pain and suffering on Mr. Lewis for the purpose of extracting false confessions.

57. Mr. Lewis's pain and suffering are compensable in damages in an amount not less than $1,500,000, and he should be awarded punitive damages in an amount not less than $3,000,000.

58. Plaintiff has no adequate and available remedies in the Democratic Republic of the Congo. ANR members have engaged in torture for many years with impunity and are not subject to any effective judicial oversight that would provide an adequate remedy to Mr. Lewis. Defendants operate above the law and are in positions of authority that would render any attempt to seek judicial remedies against them in the DRC entirely futile. Moreover, Mr. Lewis would be putting himself in grave physical danger if he were to return to the DRC to seek relief there.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully seeks:

1. Compensatory damages in an amount not less than $1,500,000;

2. Punitive damages in an amount not less than $3,000,000;

3. An award to the Plaintiff of his costs and reasonable attorneys' fees; and

4. Such other and additional relief as the Court deems just and equitable.

DATED this 29th day of July 2016.

>Donald R. Pongrace (D.C. Bar No. 445944)
>
>*/s/ Merrill C. Godfrey*
>Merrill C. Godfrey (D.C. Bar No. 464758)
>Akin Gump Strauss Hauer & Feld, LLP
>1333 New Hampshire Avenue, N.W.
>Washington, D.C. 20036-1564
>(202) 887-4000
>mgodfrey@akingump.com
>
>*Attorneys for Plaintiff Darryl Lewis*