UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARRYL LEWIS,<br><br>              Plaintiff,<br><br>v.<br><br>KALEV MUTOND, *in his individual capacity only,* and ALEXIS THAMBWE MWAMBA, *in his individual capacity only,*<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Case No. 1:16-cv-1547 (RCL)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

### I.  INTRODUCTION

This case concerns allegations brought by Darryl Lewis ("plaintiff") for violations of the Torture Victim Protection Act of 1991 ("TVPA") in connection with his unlawful detention and torture by Kalev Mutond, the General Administrator of the National Intelligence Agency ("ANR") of the Democratic Republic of the Congo ("DRC"), and Alexis Thambwe Mwamba, the DRC Minister of Justice ("defendants"). Plaintiff brings this action to recover compensatory and punitive damages under the TVPA, and sues each defendant in his individual capacity. Defendants have moved to dismiss for (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; and (3) insufficient service of process. Because the defendants are immune under the common law foreign official immunity doctrine, this Court lacks subject matter jurisdiction over the complaint and concludes that this action should be dismissed.

### II.  BACKGROUND

The factual allegations in this case center on the unlawful detention and torture of plaintiff for a period of six weeks in the DRC. Plaintiff, an American citizen and former U.S. military

1

service member, was working as an unarmed security advisor to Moise Katumbi in the DRC.[1] Plaintiff alleges that on April 24, 2016, he and three of his colleagues were detained by the Congolese riot police while leaving a political rally "solely because of their association with Mr. Katumbi." Compl. ¶ 19, ECF No. 1.

Plaintiff asserts that several ANR members subsequently arrived and transported him and his colleagues to a jail in Lubumbashi, where "ANR members interrogated [plaintiff] for three hours while physically assaulting and abusing him" for the purpose of obtaining a false confession that he was an American mercenary. Compl. ¶ 22. Plaintiff claims that the next morning he and his colleagues were transported to ANR's headquarters in Kinshasha, where plaintiff "was detained for six weeks by defendant Kalev and his subordinates." Compl. ¶ 38. Plaintiff alleges that while detained he was "interrogated daily by ANR members for approximately 16 hours a day," he "was fed no more than one meal every 24 hours," and he "was denied the necessities for basic hygiene." Compl. ¶¶ 27, 29-30.

Next, plaintiff claims that at a press conference on May 4, 2016, defendant Thambwe accused plaintiff of being an American mercenary sent to assassinate President Kabila.[2] Compl. ¶ 32. Defendant Thambwe then explained that 600 U.S. citizens, including plaintiff, "had entered the DRC since October 2015 for the purpose of assisting Mr. Katumbi in a plot to destabilize the DRC." Compl. ¶ 35. On May 5, 2016, the U.S. Embassy in Kinshasa allegedly issued a response denying defendant Thambwe's assertion that plaintiff was detained due to his involvement in a

---

[1] Moise Katumbi is a former governor of the Katanga Province in the DRC and a current candidate for president of the DRC.

[2] Joseph Kabila is the current President of the Democratic Republic of the Congo and has held this position since January 2001.

plot to overthrow President Kabila. On June 8, 2016, plaintiff was released without ever being charged by defendant Thambwe or any other DRC official.

## III. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and must be authorized to hear a case by both Article III of the U.S. Constitution and an act of Congress. Here, plaintiff asserts both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(a)(2). To survive a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has jurisdiction over the case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Because subject matter jurisdiction focuses on the Court's power to hear a claim, however, the Court must give the plaintiff's factual assertions closer scrutiny when reviewing a motion to dismiss for lack of subject matter jurisdiction than reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Bernard v. United States DOD*, 362 F. Supp. 2d 272, 277 (D.D.C. 2003) (Lamberth, J.).

Where the motion is based "on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense to liability . . . the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case." *Jungquist v. Al Nahyan*, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997). While it is relatively rare given the infrequent nature of foreign official immunity cases, the D.C. Circuit has made reference to other filings outside the allegations of the complaint in a Rule 12(b)(1) motion to ensure that it had the authority to hear a case. *See Belhas v. Ya'Alon*, 515 F.3d 1279, 1281 (D.C. Cir. 2008) (stating "our

3

background statement, while drawn largely from the allegations of the complaint, will occasionally make reference to other filings with the district court during the course of litigation").

### B. Common Law Foreign Official Immunity

In 1976 Congress enacted the Foreign Sovereign Immunities Act (FSIA) as "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, foreign states are immune from suit in United States courts unless one or more of the enumerated exceptions outlined in the FSIA applies. *See* 28 U.S.C. §§ 1330, 1604. While some circuits previously granted foreign officials immunity under the FSIA, the Supreme Court recently held that a suit brought against a foreign official acting in his official capacity is properly governed by the common law and not the FSIA. *See Samantar v. Yousuf*, 560 U.S. 305 (2010). "In contrast, suits against officers in their personal capacities must pertain to private action[s]—that is, to actions that exceed the scope of authority vested in that official so that the official cannot be said to have acted on behalf of the state." *Doe I v. Israel*, 400 F. Supp. 2d 86, 104 (D.D.C. 2005).

Under the common law foreign official immunity doctrine, "a foreign official is entitled to one of two different types of immunity: status-based or conduct-based immunity." *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 11 n.6 (D.D.C. Sept. 29, 2014). Status based immunity is available to diplomats and heads of state and shields them from legal proceedings "by virtue of his or her current official position, regardless of the substance of the claim."[3] Chimene I. Keitner, *The Common Law of Foreign Official Immunity*, 14 Green Bag 2d 61, 63 (2010) (cited by *Yousuf v.*

---

[3] "Diplomatic immunity shields diplomats (or 'public ministers') who have been accredited by the receiving state from criminal and most civil proceedings during their appointment, unless such immunity is waived by the sending state. Such immunity also extends to certain accredited members of U.N. Missions and certain members of 'special diplomatic missions.' Head of state immunity shields incumbent heads of state from the judicial processes of foreign courts, and has also been interpreted as extending to incumbent foreign ministers." Kietner, *supra*, at 63-64.

4

*Samantar*, 699 F.3d 763 (4th Cir. 2012)). Here, the issue is whether defendants are entitled to conduct based immunity. Conduct based immunity is available to "any [] [p]ublic minister, official, or agent of the [foreign] state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." Restatement (Second) of Foreign Relations Law of the United States § 66 (1986).

When a foreign official asserts immunity, the court applies "a two-step procedure developed for resolving a foreign state's claim of sovereign immunity." *Samantar*, 560 U.S. at 311. Under this procedure, the foreign official can "request a 'suggestion of immunity' from the State Department. If the request [is] granted, the district court surrender[s] its jurisdiction." *Id*. However, if the request is not granted "a district court 'ha[s] authority to decide for itself whether all the requisites for such immunity exist[]." *Id*. "The requisites for conduct-based immunity are: (1) the actor must be a public minister, official, or agent of the foreign state; (2) the act must have been performed as part of the actor's official duty; and (3) exercising jurisdiction would have the effect of enforcing a rule of law against the foreign state." Restatement (Second) of Foreign Relations Law of the United States § 66 (1986).

IV.    ANALYSIS

While the plaintiff's complaint properly alleges federal question jurisdiction under 28 U.S.C. § 1331 as well as diversity jurisdiction under 28 U.S.C. § 1332(a)(2), the defendants' jurisdictional attacks rely on the doctrine of common law foreign official immunity. Defendants are not subject to immunity under the first step of the common law foreign official immunity doctrine articulated in *Samantar* because the State Department has not issued a request that the District Court surrender its jurisdiction. However, the Court finds that it lacks subject matter jurisdiction under the second step of *Samantar* given that (1) the defendants are agents of the DRC;

(2) any actions defendants took in relation to the plaintiff's detention were carried out in their official capacities; and (3) exercising jurisdiction would have the effect of enforcing a rule of law against the DRC.

While the doctrine of common law foreign official immunity is not fully developed, the history of foreign official immunity in the D.C. Circuit is instructive to the analysis of the present case. Prior to the Supreme Court's decision in *Samantar*, the D.C. Circuit "had found that foreign official immunity was governed by the FSIA." *Giraldo v. Drummond Co.*, 808 F. Supp. 2d at 250. More specifically, in *Belhas*, the D.C. Circuit held that the "FSIA contains no unenumerated exception [to foreign official immunity] for violations of *jus cogens* norms."[4] 515 F.3d at 1287. In *Belhas*, a retired Israeli General was sued under the TVPA for alleged "war crimes, extrajudicial killing, crimes against humanity, and cruel, inhuman or degrading treatment or punishment." *Id.* at 1282. However, the Israeli Ambassador to the United States wrote a letter stating that the General was acting "in the course of [his] official duties, and in furtherance of the official policies of the State of Israel." *Id.* at 1284. The D.C. Circuit held that the General qualified for immunity under the FSIA given that "his actions were within the authority given to him by the State of Israel." *Id.*

The Supreme Court subsequently held that foreign official immunity is properly governed by the common law and not the FSIA, effectively rejecting the D.C. Circuit's finding in *Belhas*. *Samantar*, 560 U.S. at 322 n.17. However, the Supreme Court noted that Courts of Appeals' analysis of foreign official immunity under the FSIA "may be correct as a matter of common-law principles." *Id.* Thus, *Belhas* remains instructive.

---

[4] *Jus cogens* norms are "norm[s] accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted [.]" *Belhas*, 515 F.3d at 1286 n. 7. Whereas *ultra vires* actions are defined as "[an act by a legal official beyond the scope of the official's duties." *Ultra Vires*, Bouvier Law Dictionary Desk Edition (2012).

Here, plaintiff sues defendants in their individual capacities due to their alleged *ultra vires* actions. While the D.C. Circuit has not directly addressed the issue of whether *ultra vires* actions fall outside the scope of common law foreign official immunity, another member of this Court, Judge Bates, followed the D.C. Circuit's rationale in *Belhas* to determine that "allegations of *jus cogens* violations do not defeat [foreign official] immunity." *Giraldo,* 808 F. Supp. 2d 247, 251 (D.D.C. 2011). In *Giraldo,* the court applied the D.C. Circuit's reasoning that "without 'something more nearly express' from Congress, it would not adopt a rule that would require federal courts to 'assume jurisdiction over the countless human rights cases that might well be brought by the victims of all the ruthless military juntas, presidents-for-life, and murderous dictators of the world, from Idi Amin to Mao Zedong.'" *Id.* at 250. "Not only would such a rule place a strain upon our courts and our diplomatic relations, but it would also eviscerate any protection that foreign official immunity affords." *Id.*

In the present case, the first required element of common law foreign immunity is satisfied without dispute given that it is uncontested that both Mutond and Thambwe are agents of the DRC. This Court then must determine whether the alleged actions were performed as part of the actor's official duty. Here, plaintiff asserts that the defendants were not acting in their official capacities and should not be granted immunity given that "[b]oth committed acts outside the lawful authority they are entitled to exercise under DRC law." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss. 9., ECF. No. 16. While plaintiff cites several cases to establish that immunity is automatically forfeited when a defendant acts beyond the scope of their authority, this Circuit has held that "[i]n cases involving foreign sovereign immunity, it is also appropriate to look to statements of the foreign state that either authorize or ratify the acts at issue to determine whether the defendant committed the alleged acts in an official capacity." *Belhas,* 515 F.3d at 1283.

7

Ratification of an official's actions can be sufficient to establish immunity under the common law foreign official immunity doctrine. *See id.* Here, the DRC's Ambassador to the United States sent the U.S. Department of State two letters in relation to the case at bar just as the Israeli Ambassador to the U.S. transmitted a letter in relation to the General's case in *Belhas*. In these letters, the DRC Ambassador requested that the United States Government submit a suggestion of immunity to the court on behalf of the defendants given that "any actions Messrs. Thambwe's and Mutond's took or statements they made in connection with Mr. Lewis's detention was in their official capacities." Reply Mem. in Supp. of Defs.' Mot. to Dismiss Ex. B. 3., ECF No. 17. Because the D.C. Circuit considered the Israeli Ambassador's ratification of the General's actions sufficient to establish that he was acting within the scope of his authority in *Belhas*, this Court finds the DRC Ambassador's ratification of the defendants' actions sufficient to establish that they were acting in their official capacities in the present case. Accordingly, this Court finds that plaintiff's complaint does not present sufficient evidence against the defendants to sue them in their personal capacities.

Relying on opinions from other circuits, plaintiff further asserts that the defendants "could not have been torturing in their 'official capacity' because torture was *ultra vires* under DRC law." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss. 13. However, Judge Bates in *Giraldo* found the D.C. Circuit's reasoning in *Belhas* to be instructive and this Court concurs. In *Belhas* the General was sued under the TVPA for *jus cogens* violations but was granted immunity under the FSIA given that he was acting in his official capacity. Here, defendants are being sued under the TVPA for the unconstitutional torture and detention of plaintiff but were acting in their official capacities. Under the D.C Circuit's reasoning in *Belhas* regarding foreign official immunity, the defendants were acting in their official capacities when they carried out the allegedly unlawful acts.

Accordingly, this Court finds the second requisite of conduct based immunity—whether the alleged actions were performed as part of the actor's official duty—under *Samantar* to be satisfied.

The final required element for common law foreign immunity is that exercising jurisdiction over defendants will have the effect of enforcing the rule of law against the DRC. Here, defendants were acting in their official capacities on behalf of the DRC when they carried out the alleged *ultra vires* acts just as the General in *Belhas* was found to be acting in his official capacity "in furtherance of the interests of the sovereign" when he carried out the alleged *jus cogens* acts. 515 F.3d at 1282. Plaintiff attempts to differentiate "conduct that violates international principles of *jus cogens* and conduct that is outside the constitutional authority of a defendant." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss. 14. However, this Court finds that the rationale laid out in *Belhas* regarding *jus cogens* violations applies with even greater force to the alleged DRC constitutional violations in the present case. *Jus cogens* norms are universally illegal whereas violations of a nation's constitution are country specific and would require our judicial system to assess whether a foreign official complied with his own nation's laws. Here, the Court would be forced to question the constitutionality of an action that a foreign nation has ratified which would arguably place an even greater "strain upon our courts and our diplomatic relations." *Giraldo*, 808 F. Supp. 2d at 250. Consequently, exercising jurisdiction over defendants would have the effect of enforcing a rule of law against the DRC, which satisfies the final requirement of common law foreign official immunity under *Samantar*.

This Court lacks subject matter jurisdiction given that (1) the defendants are agents of the DRC; (2) any actions defendants took in relation to the plaintiff's detention were carried out in their official capacities; and (3) exercising jurisdiction would have the effect of enforcing a rule of

law against the DRC. Therefore, this Court will grant defendants' motion to dismiss for lack of subject matter jurisdiction.

## V. CONCLUSION

For the reasons stated above, this Court will grant defendant Kalev Mutond and defendant Alexis Thambwe Mwamba's motion to dismiss for lack of subject matter jurisdiction. Accordingly, this Court will not address defendants' motion to dismiss for lack of personal jurisdiction or insufficient service of process at this time.

A separate order accompanies this memorandum opinion.

DATE: July 6, 2017

Royce C. Lamberth
United States District Judge