UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DARRYL LEWIS,**

    *Plaintiff,*

v.

**KALEV MUTOND,** *in his individual capacity only,* and

**ALEXIS THAMBWE MWAMBA,** *in his individual capacity only,*

    *Defendants.*

Case No. 1:16-cv-1547-RCL

## MEMORANDUM OPINION

Plaintiff Darryl Lewis sued Kalev Mutond, the General Administrator of the National Intelligence Agency, Agence Nationale de Renseignements ("ANR") of the Democratic Republic of the Congo ("DRC"), and Alexis Thambwe Mwamba, the DRC Minister of Justice (together, "defendants"), alleging that defendants violated the Torture Victim Protection Act of 1991 ("TVPA") by unlawfully detaining and torturing him. Compl., ECF No. 1. Lewis sued both defendants in their individual capacities and seeks compensatory and punitive damages. *Id.* Defendants moved to dismiss the case for (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, and (3) insufficient service of process. ECF No. 15. The Court originally held defendants immune under the common law of foreign official immunity and granted their motion to dismiss for lack of subject matter jurisdiction. ECF No. 19. But on appeal, the D.C. Circuit vacated and remanded the decision, holding that the defendants were not entitled to foreign official immunity. *Lewis v. Mutond*, 918 F.3d 142, 147 (D.C. Cir. 2019).

1

The Court now addresses the remaining issues in defendants' motion to dismiss. Defendants move to dismiss the case for lack of personal jurisdiction. ECF No. 15. In response, Lewis requests jurisdictional discovery.[1] ECF No. 16. For the reasons explained below, the Court will **GRANT** the motion to dismiss for lack of personal jurisdiction and **DENY** Lewis's request for jurisdictional discovery.

## I.   BACKGROUND

This case originates from Darryl Lewis's alleged detention and torture in the DRC for a six-week period. Lewis is an American citizen and military veteran. Compl. ¶ 3. Lewis states that on April 24, 2016, he was working in the DRC as an "unarmed security advisor" to DRC presidential candidate Moise Katumbi.[2] Compl. ¶ 18. While Lewis and his colleagues were driving near a political rally, members of the ANR purportedly stopped them, dragged them from the vehicle, and detained them because of their association with Katumbi. *Id.* ¶ 19. Lewis asserts that ANR officials then delivered the group to a jail in Lubumbashi. *Id.* ¶ 21. These officials allegedly inflicted physical abuse and "extreme mental and physical pain and suffering" on Lewis to "obtain a false confession that [he] was an American mercenary soldier." *Id.* ¶ 20–23. The ANR then transported Lewis and his colleagues to Kinshasa. *Id.* ¶ 26. Lewis's detention in Kinshasa lasted six weeks. *Id.* ¶ 27. During this detention, ANR officials interrogated Lewis for "approximately 16 hours a day," deprived him of sleep, fed him "no more than one meal every 24 hours," and denied his requests for "basic toiletries." *Id.* ¶ 27–29. Lewis asserts that Mutond—the General Administrator of the ANR—directed subordinates to detain and torture Lewis. *Id.*

---

[1] Defendants retracted their argument regarding insufficient service of process in their reply. *See* Defs.' Reply, ECF No. 17 at 3 n.2.

[2] Katumbi is a former governor of the Katanga Province, and at the time of the alleged incident was a candidate for president of the DRC.

2

¶ 38. Mutond allegedly threated Lewis, telling him, "Don't let me find out you're a mercenary." *Id.* ¶ 31.

Lewis further contends that Thambwe publicly accused him of being a "mercenary sent to assassinate President [Joseph] Kabila" during a press conference. *Id.* ¶ 32. At this press conference, Thambwe explained that he had "documented proof" that "American and South African mercenaries, including . . . Lewis" were working for Katumbi. Thambwe continued by claiming that "600 United States citizens" and ex-soldiers had entered the DRC as "part of a supposed plot by . . . Katumbi to destabilize the DRC." *Id.* ¶ 33, 35. Thambwe supposedly made these statements to create a "false narrative" about "former U.S. military personnel infiltrating the DRC to overthrow the government." *Id.* ¶ 37.

On June 8, 2016, Lewis was released from detention. *Id.* ¶ 45. The DRC government never charged Lewis with any crime. *Id.* ¶ 47. Lewis claims that Thambwe continues threatening Lewis with imprisonment should he return to the DRC. *Id.* ¶ 46.

## II.   LEGAL STANDARD

This case returns to the Court after the D.C. Circuit vacated the Court's decision that defendants were entitled to foreign official immunity. *Lewis*, 918 F.3d at 144. Beyond that issue, neither party disputes subject matter jurisdiction. *See* Compl. ¶ 4; Defs.' Motion to Dismiss, ECF No. 15. And for good reason—this case implicates both federal question and diversity jurisdiction.[3] Mutond and Thambwe now move to dismiss for lack of personal jurisdiction. ECF

---

[3] Lewis's claim arises under the TVPA, a federal statute. *See* 28 U.S.C. § 1350 note. Diversity jurisdiction also applies. Lewis, a citizen of Georgia, and Mutond and Thambwe, citizens of the DRC, are completely diverse. And Lewis pleaded an amount-in-controversy of $4,500,000. So the Court has subject matter jurisdiction under either 28 U.S.C. § 1331 or § 1332.

3

No. 15. Lewis opposes this motion and, in the event of dismissal, requests jurisdictional discovery. ECF No. 16.

To avoid dismissal under Rule 12(b)(2), the plaintiff carries the burden of proving personal jurisdiction. *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). The court must resolve any factual disputes in favor of the plaintiff. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). And while the court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, "conclusory allegations 'are not entitled to the assumption of truth.'" *Moldauer v. Constellation Brands Inc.*, 87 F. Supp. 3d 148, 153 (D.D.C. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378–79 (D.C. Cir. 1988). The plaintiff can satisfy this burden through a *prima facie* showing. *Mwani*, 417 F.3d at 7.

## III.   DISCUSSION

Since the defendants no longer contest service of process, the Court must address two remaining issues regarding their motion to dismiss. *See* Defs.' Reply, ECF No. 17 at 3 n.2 (acknowledging proper service under Rule 4(k)(2)). First, can the Court constitutionally exercise personal jurisdiction over Mutond and Thambwe? Second, if the Court cannot, is Lewis entitled to jurisdictional discovery? The Court must answer both questions in the negative.

### A. The Court Will Dismiss the Case for Lack of Personal Jurisdiction

Defendants move to dismiss Lewis's claim for lack of personal jurisdiction under the Due Process Clause of the Fifth Amendment. ECF No. 15. Federal Rule of Civil Procedure 4(k)(2) authorizes personal jurisdiction over a defendant "who is not subject to jurisdiction in any state's courts of general jurisdiction" provided that: (1) the defendant is served with a summons or files a waiver of service; and (2) "exercising jurisdiction is consistent with the United States Constitution

and its laws." Fed. R. Civ. P. 4(k)(2). For personal jurisdiction to comport with the Fifth Amendment's Due Process Clause, a defendant must "have certain minimum contacts with . . . [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

The Constitution permits two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). A court may exercise general personal jurisdiction over a defendant that has "continuous and systematic" contacts that render it "essentially at home" in the forum. *Id.* General jurisdiction extends to "any and all claims brought against a defendant." *Id.* (internal quotation omitted). For an individual, the "paradigm forum" with general jurisdiction is the individual's domicile. *Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773, 1780 (2017). Since Mutond and Thambwe are citizens of the DRC, the Court cannot exercise general jurisdiction over them. *See* Compl. ¶ 6; Defs.' Mot. to Dismiss, ECF No. 15-1 at 13.

A court has specific jurisdiction over a foreign defendant when the defendant has minimum contacts with the forum such that it "should reasonably anticipate being haled into court there." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). First, a defendant must have "'purposefully directed' his activity at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (quoting *Keeton*, 465 U.S. at 774). A defendant who "purposefully avails itself of the privilege of conducting activities" within the forum will also meet this requirement. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Second, the plaintiff's claim "must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alterations omitted). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Rather, "the defendant's conduct . . . must form the necessary connection." *Id.*

Lewis offers two theories to support specific jurisdiction. First, he posits that the defendants "targeted [him] for detention and torture" because he is an American military veteran. ECF No. 16 at 23. Second, Lewis suggests that the defendants targeted him "to support a false narrative . . . that American mercenaries were attempting to overthrow the Kabila regime." *Id.* By portraying Lewis as an American mercenary, the defendants sought to "entangl[e] the United States in DRC affairs." *Id.* at 24. For example, Lewis points to press conferences in which Thambwe "asserted that 600 United States citizens . . . and some ex-soldiers had entered the DRC since October 2015" and were "part of a supposed plot by [Katumbi] to destabilize the DRC." Compl. ¶ 35. Neither of these theories enable this Court to exercise specific jurisdiction over the defendants.

Lewis's first theory—that torture permits an inference that defendants purposefully directed their conduct at the United States—is foreclosed by this Circuit's precedents. As the D.C. Circuit has explained, the torture of American citizens abroad, standing alone, does not meet the minimum-contacts requirement. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002). The same standard applies to defendants who kill American citizens abroad but have no other contacts with the United States. *Livnat v. Palestinian Authority*, 851 F.3d 45, 57 (D.C. Cir. 2017). Instead, defendants must "expressly intend[]" to affect the United States through their violent conduct. *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 73 (D.D.C.

2007). For example, victims of an al-Qaeda terrorist bombing showed purposeful direction by pointing to al-Qaeda's long-running conspiracy to "cause pain and sow terror" in the United States. *Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005). These cases reflect the principle that "a plaintiff's contacts with the defendant and the forum state" cannot "drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. Lewis has not alleged that Mutond and Thambwe had a conspiracy to cause pain or sow terror in the United States by torturing American citizens. And the torture itself cannot permit that inference. *See Price*, 294 F.3d at 95; *Livnat*, 851 F.3d at 57. Without more, Lewis's torture allegations cannot justify specific jurisdiction.

Lewis's assertion that defendants sought to "entangl[e] the United States in DRC affairs" fails for similar reasons. ECF No. 16 at 24. In Lewis's telling, Mutond and Thambwe revealed purposeful direction to ensnare the United States in DRC affairs by promoting a narrative about American mercenaries operating in the DRC. *See id.* He asserts that defendants tortured him to obtain a false confession promoting this narrative. *Id.* Hence, Mutond's threat: "You better not let me find out you're a mercenary." Compl. ¶ 31. Lewis also points to Thambwe's statements at press conferences: (1) that Lewis was "sent to assassinate [then-]President Kabila," (2) that American and South African mercenaries were working for Katumbi, (3) that "600 United States citizens" were present in the DRC as "part of a supposed plot by [Katumbi] to destabilize the DRC," and (4) that those mercenaries were living in residences owned by Katumbi. Compl. ¶¶ 32–35. These statements do reference the United States. But the references appear incidental to Mutond and Thambwe's goal—affecting politics in the DRC. Take Thambwe's investigation into "American and South African" mercenaries. Compl. ¶ 33. Defendants could have stated that mercenaries were invading from virtually any nation; what mattered was that mercenaries were aiding Katumbi's election chances.

Moreover, the defendants pushed a narrative about American *mercenaries*. A mercenary is "a professional soldier hired to serve in a foreign army." *Mercenary, New Oxford American Dictionary* (2d ed. 2005). And international law establishes that a mercenary is wholly unconnected from his home nation's government. The Geneva Conventions define a "mercenary" as, in part, "any person who . . . [i]s motivated to take part in the hostilities essentially by the desire for *private gain*" and who "[h]as not been sent by a State which is not a Party to the conflict on official duty as a member of its armed forces."[4] Defendants' use of "mercenary" fits with this definition. Thambwe opened an investigation into foreign mercenaries working for Katumbi. Compl. ¶ 33. And the mercenary narrative implicated "former U.S. military personnel" rather than individuals connected with the American government. *See* Compl. ¶ 37. The Court cannot infer that Mutond and Thambwe purposefully directed their conduct at the United States when Lewis's allegations point their intent squarely at the DRC.

Lewis parallels his case to *Mwani*, but the shoe does not fit. The plaintiffs in *Mwani* alleged that Osama bin Laden "orchestrated the bombing of the American embassy in Nairobi" both to kill American and Kenyan employees and to "cause pain and sow terror in the United States." *Mwani*, 417 F.3d at 13. This bombing, the plaintiffs alleged, was part of a conspiracy by al-Qaeda to commit violence against the United States. *Id.* Plaintiffs pointed to al-Qaeda's pre-9/11 attacks to demonstrate this anti-United States animus. *Id.* Lewis has not shown that Mutond and

---

[4] Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflicts (Protocol I) art. 47, June 8, 1977, 1125 U.N.T.S. 4, 25, https://treaties.un.org/doc/publication/unts/volume%201125/volume-1125-i-17512-english.pdf (emphasis added).

Thambwe's mercenary narrative furthered a conspiracy against the United States. Nor has Lewis indicated that Mutond and Thambwe sought to "cause pain" or "sow terror" in the United States.

In short, Lewis has not made a *prima facie* showing to support a finding of specific personal jurisdiction. *Price*, *Livnat*, and *Nikbin* establish that Lewis's allegations of torture, standing alone, cannot permit this Court to infer that defendants purposefully directed their conduct at the United States. *See Price*, 294 F.3d at 95; *Livnat*, 851 F.3d at 57; *Nikbin*, 471 F. Supp. 2d at 73. And any narrative that Mutond and Thambwe sought to construct was focused on the DRC—not the United States. For these reasons, the Court cannot exercise personal jurisdiction over the defendants consistent with the Fifth Amendment of the Constitution.

### B. The Court Will Deny Lewis's Request for Jurisdictional Discovery

Lewis argues that the Court should permit him to conduct jurisdictional discovery in the event the Court finds that it lacks personal jurisdiction. A district court has "broad discretion" to resolve discovery disputes. *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). When faced with a motion to dismiss for lack of personal jurisdiction, a plaintiff is "entitled to *reasonable* discovery." *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.C. Cir. 2003) (emphasis added). This standard is "quite liberal"—jurisdictional discovery is proper "so long as a party demonstrates that it can supplement its jurisdictional allegations." *Id.*; *see GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). Thus, a plaintiff seeking personal-jurisdiction discovery "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Diamond Chem.*, 268 F. Supp. 2d at 15. Requests for jurisdictional discovery, however, "cannot be based on mere conjecture or speculation." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008). So when a district court "denies a discovery request

that would amount to nothing more than a fishing expedition," it "does not abuse its discretion." *Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997).

Even considering this Circuit's permissive standard on this subject, Lewis fails to show that additional discovery could cure this case's jurisdictional problems. In his response, Lewis argues that discovery is appropriate because it is "reasonably inferable that there is more to the story" than what he can recall. ECF No. 16 at 27. But recall that Lewis has two theories of jurisdiction: (1) that defendants tortured him, an American citizen; and (2) that defendants purposefully directed their conduct at the United States by publicizing a narrative about American mercenaries. *See* ECF No. 16 at 19. Sole allegations of torture do not permit a court to infer that defendants purposefully directed their conduct toward the United States. *See Price*, 294 F.3d at 95; *Livnat*, 851 F.3d at 57; *Nikbin*, 471 F. Supp. 2d at 73. And additional facts about defendants' mercenary narrative would not permit the Court to infer that defendants purposefully directed their actions toward the United States. Lewis's conclusory allegation about defendants' intent to "entangl[e] the United States in DRC affairs" cannot support personal jurisdiction without this link.

*Livnat* is instructive on this point. In *Livnat*, victims of a terrorist attack in Israel alleged that the defendant had a "general practice of using terrorism to influence United States public opinion and policy." *Livnat*, 851 F.3d at 57. But they requested discovery concerning the defendant's "general political and financial activities in the United States, such as its lobbying contracts and U.S. investments." *Id.* The D.C. Circuit thus denied jurisdictional discovery because it would not "cure the [victims'] failure to tie their jurisdictional theory to the attack . . . with specific facts." *Id.* at 58. So too here. Lewis asserts only that "it is reasonably inferable that there is more to the story" than he could allege based on personal knowledge. ECF No. 16 at 22.

But without identifying specific ways to supplement his allegations, Lewis has failed to tie defendants' supposed contacts to his specific attack.

The present allegations do not draw the requisite connection between the defendants' conduct and the United States. And any discovery on this matter would be outside the scope of these already-existing allegations—essentially, a fishing expedition. *Cf. Livnat*, 851 F.3d at 57–58; *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021) (affirming the denial of jurisdictional discovery because the court could "not see what facts additional discovery could produce that would affect [its] jurisdictional analysis"). The Court will **DENY** Lewis's request for jurisdictional discovery.

## IV.    CONCLUSION

For the reasons discussed above, the Court shall **GRANT** defendants' motion to dismiss for lack of personal jurisdiction and **DENY** plaintiff's request for jurisdictional discovery. The case is **DISMISSED WITHOUT PREJUDICE**.[5] A separate order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 24th day of September, 2021.

Royce C. Lamberth
United States District Judge

---

[5] *See Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998) (acknowledging that dismissals for lack of personal jurisdiction are without prejudice).